IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FERMIN MORALES, | ) | CASE NO. 4:13 CV 775 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

This is an action by Fermin Morales under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for supplemental security income ("SSI").[1]

The parties have consented to my jurisdiction.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4]

---

[1] ECF # 1.

[2] ECF # 24.

[3] ECF # 10.

[4] ECF # 11.

Under the requirements of my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.      The Commissioner's decision**

Morales, who was 47 years old at the time of the hearing,[11] has a ninth grade education[12] and some experience years ago doing auto body repair,[13] although this was not found to be past relevant work.[14] He is able to live independently, with the ability to cook, clean, shop, and care for himself.[15]

---

[5] ECF # 5.

[6] ECF # 12.

[7] ECF # 15 (Morales's brief), ECF # 17 (Commissioner's brief).

[8] ECF # 15-1 (Morales's charts), ECF # 17-1 (Commissioner's charts).

[9] ECF # 16 (Morales's fact sheet).

[10] ECF # 27.

[11] *See*, ECF # 11, Transcript of Proceedings ("Tr.") at 28.

[12] *Id.* at 130.

[13] *Id.* at 127-28, 133-38.

[14] *Id.* at 28. Indeed, the opinion of the Administrative Law Judge explicitly notes that "claimant has rarely worked," and that he "stopped working some thirteen years prior to [allegedly] being rendered unable to work because of his condition." *Id.* at 26.

[15] *Id.* at 26.

The Administrative Law Judge ("ALJ") found that Morales had the following severe impairments: human immunodeficiency virus, hepatitis B and C, myositis, degenerative disc disease of the lumbar spine, bipolar disorder, mood disorder-not otherwise specified, intermittent explosive disorder, and polysubstance dependence in remission.[16] After examining in some detail whether Morales's HIV impairment and his mental impairments met or equaled the relevant listings,[17] the ALJ decided that the relevant impairments did not meet or equal a listing.[18]

The ALJ then made the following finding regarding Morales's residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant may sit, with normal breaks, for up to six hours in an eight hour workday and may stand and/or walk, with normal breaks, for up to six hours in an eight hour workday; the claimant is limited to the performance of low stress tasks, defined as being preclusive of high production quotas [such as piece-rate work or assembly line work], strict time requirement, arbitration, negotiation, confrontation, directing the work of, or being responsible for the safety of, others, undertaken in a work environment that involves no more than limited and superficial interaction with co-workers, supervisors and the general public.[19]

---

[16] *Id.* at 21.

[17] *Id.* at 21-23.

[18] *Id.*

[19] *Id.* at 23.

-3-

As noted, Morales was determined to have no past relevant work.[20]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing incorporating the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Morales could perform.[21] The ALJ, therefore, found Morales not under a disability.[22]

The Appeals Council denied Morales's request for review of the ALJ's decision.[23] With this denial, the ALJ's decision became the final decision of the Commissioner.[24]

## C.  Issue presented

Morales asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Morales presents the single argument that the ALJ erred in rejecting the opinions of his treating physicians, Paul Cayavec, D.O., an internist, and Pradeep Mathur, M.D., a psychiatrist.[25]

---

[20] *Id.* at 28.

[21] *Id.* at 28-29.

[22] *Id.* at 29.

[23] *Id.* at 1-5.

[24] *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); 20 C.F.R. § 416.1481.

[25] ECF # 15 at 3-8.

**D.      Disposition**

For the reasons that follow, I will conclude that the ALJ's decision is not supported by substantial evidence. Accordingly, the denial of Morales's application will be reversed and the matter remanded.

## Analysis

**A.      Standards of review**

*1.      Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[26]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[26] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[27] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[28]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.   *The treating source rule*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[29]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[30]

---

[27] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[28] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[29] 20 C.F.R. § 404.1527(d)(2).

[30] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[31] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[32]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[33] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[34] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[35] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[36]

In *Wilson v. Commissioner of Social Security*,[37] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[31] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[32] *Id.*

[33] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[34] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[35] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[36] *Id.* at 535.

[37] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[38] The court noted that the regulation expressly

contains a "good reasons" requirement.[39] The court stated that to meet this obligation to give

good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[40]

The court went on to hold that the failure to articulate good reasons for discounting

the treating source's opinion is not harmless error.[41] It drew a distinction between a

regulation that bestows procedural benefits upon a party and one promulgated for the orderly

transaction of the agency's business.[42] The former confers a substantial, procedural right on

the party invoking it that cannot be set aside for harmless error.[43] It concluded that the

requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[38] *Id.* at 544.

[39] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[40] *Id.* at 546.

[41] *Id.*

[42] *Id.*

[43] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[44]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[45] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[46] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[47] *Blakley v. Commissioner of Social Security*,[48] and *Hensley v. Astrue*.[49]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[50] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[51] These factors are expressly set out in 20 C.F.R. § 416.927(d)(2). Only if the ALJ decides not to give the treating source's

---

[44] *Id.*

[45] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[46] *Id.* at 375-76.

[47] *Rogers*, 486 F.3d at 242.

[48] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[49] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[50] *Gayheart*, 710 F.3d at 376.

[51] *Id.*

opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. § 416.927(d)(2)(i)-(ii), (3)-(6).[52] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[53]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[54] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[55] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[56] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[57] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[58]

But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

---

[52] *Id.*

[53] *Rogers*, 486 F.3d at 242.

[54] *Gayheart*, 710 F.3d at 376.

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[59]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[60] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[61] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[62] or that objective medical evidence does not support that opinion.[63]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[59] *Id.*

[60] *Rogers*, 486 F.3d 234 at 242.

[61] *Blakley*, 581 F.3d at 406-07.

[62] *Hensley*, 573 F.3d at 266-67.

[63] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[64] The Commissioner's *post hoc* arguments on judicial review are immaterial.[65]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[66]

- the rejection or discounting of the weight of a treating source without assigning weight,[67]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[68]

---

[64] *Blakley*, 581 F.3d at 407.

[65] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

[66] *Blakley*, 581 F.3d at 407-08.

[67] *Id.* at 408.

[68] *Id.*

-12-

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[69]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[70] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[71]

The Sixth Circuit in *Blakley*[72] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[73] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[74]

In *Cole v. Astrue*,[75] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[69] *Id.* at 409.

[70] *Hensley*, 573 F.3d at 266-67.

[71] *Friend*, 375 F. App'x at 551-52.

[72] *Blakley*, 581 F.3d 399.

[73] *Id.* at 409-10.

[74] *Id.* at 410.

[75] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

-13-

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[76]

**B.     Application of standards -- the decision of the ALJ is not supported by substantial evidence.**

The heart of this matter is the treatment accorded to the opinions of Drs. Cayavec and Mathur. More specifically, the issue here is whether the admitted failure of the ALJ to strictly conform to the treating physician rule/good reasons requirement can be otherwise excused,[77] since there is no dispute that, if these opinions had received controlling weight, Morales would have been found disabled.

This case, unfortunately, again presents the issue of when non-compliance with the well-known, frequently re-affirmed treating physician rule can or should be excused or overlooked. That rule, which is re-stated above, is not new. Moreover, as a recent decision from the Southern District of Ohio details, the Sixth Circuit has insisted, in an unvaried line of cases stretching back over the last 10 years, that the provisions of the treating physician rule and good reasons requirement are meant to be enforced as a mandatory procedural protection for claimants.[78]

---

[76] *Id.* at 940.

[77] ECF # 27 at 14-22.

[78] *Hale v. Colvin*, No. 3:13CV182, 2014 WL 868124, at *5 (S.D. Ohio Mar. 5, 2014).

-14-

According to that line of Sixth Circuit authority, the touchstone of the treating physician rule and good reasons requirement is meaningful judicial review.[79] Thus, while an ALJ is not required to individually discuss or analyze every piece of relevant evidence, he must, within the four corners of his opinion, "build a logical bridge from the evidence to the conclusion" he ultimately adopts.[80] Stated differently, the ALJ must identify in the opinion specific discrepancies between a treating source's opinion and the other evidence of record deemed more credible or probative, so as to explain why the ALJ decided that the treating source opinion should not receive controlling weight or great deference.[81] Although the reviewing court need not require that this comparative analysis occur strictly within the context of a discussion of weight assigned or within a single unified statement, the reviewing court must insist that the articulation of reasons for weight assigned be stated by the ALJ in the opinion itself, and be framed in terms of the regulatory factors, and not merely by reference to exhibits that, if later retrieved and examined by the court *de novo*, might provide the raw material that could then be stitched together into a weight analysis in support the ALJ's finding.

---

[79] *Wilson*, 378 F.3d at 544, cited in *Gayheart*, 710 F.3d at 376.

[80] *Hale*, 2014 WL 868124, at *8.

[81] *Friend*, 375 F. App'x at 543.

So understood, this is what the Sixth Circuit in *Cole* meant when it held that failure to fully comply with the treating physician rule and good reasons requirement would be harmless error if the goal of that requirement was met despite non-compliance.[82]

Here, as noted above, the ALJ found Morales had severe impairments from his HIV and from multiple mental disorders.[83] In that regard, the ALJ then adopted an RFC that limited Morales, among other things,  to low stress tasks; no high production quotas; no strict time requirements; and no more than superficial and limited interaction with co-workers, supervisors, or the public.[84]

The record as a whole contains opinions from the two treating physicians previously mentioned, plus two consulting examining psychologists and the state agency reviewing psychologist. The ALJ assigned the treating physicians little weight[85] but assigned the consulting examiners and the state agency reviewer some weight.[86]

In assigning that lesser weight to the treating sources, the ALJ did not perform the two-step *Gayheart* analysis, going first to whether the treating sources should receive controlling weight, and then, if not, to discussing what weight to give. Rather, both treating sources were simply assigned little weight, with that decision explained as to Dr. Cayavec

---

[82] *Cole*, 661 F.3d at 940.

[83] Tr. at 21.

[84] *Id.* at 23.

[85] *Id.* at 26-27.

[86] *Id.*

on the grounds that "his opinion was inconsistent with the consistently benign findings reflected in his treatment notes ...,"[87] and as to Dr. Mathur on the basis that his opinion was inconsistent with all other psychologically based opinions and also inconsistent with the opinion he rendered sixty days earlier, where Dr. Mathur did not find a marked limitation in Morales's ability to work in proximity to others or to respond appropriately to changes in the workplace.[88]

As to Dr. Cayavec, Morales observes that any "benign" findings in Dr. Cayavec's treatment notes relate to progress in managing Morales's HIV, and not to any lessening of the severity of his mental difficulties, of which Dr. Cayavec, as a treating physician, was well-aware and also documented in his treatment notes.[89] While that may be true, the fact is that the ALJ is not clear in drawing the comparison between what notes he considered to be "benign" in contrast with the supposed severity of the RFC opinion. Thus, the ALJ here has created no meaningful bridge clearly connecting an identifiable element of the physician's notes with a supposed contrary opinion from that physician.[90] Accordingly, Dr. Cayavec's

---

[87] *Id.* at 26-27.

[88] *Id.* at 27-28.

[89] ECF # 15 at 5.

[90] I also note that care needs to be taken when attempting to diminish the weight of a functional opinion by recourse to treatment notes. As Magistrate Judge Limbert observed, treatment notes are usually not written to describe functional limitations, but to record changes in the patient's underlying malady. *Harmon v. Astrue*, No. 5:09CV2765, 2011 WL 834138, at *10 (N.D. Ohio Feb. 8, 2011). Without denying that the regulations do require that an opinion be supported by substantial evidence in the record, one possible result of giving greater weight to treatment notes over functional opinions is that by so doing the ALJ

opinion was not analyzed correctly under the treating physician rule and good reasons requirement, and that deficiency is not excused by the ALJ's opinion otherwise meeting the goal of the rule despite its non-conformity with its mandates.

As concerns Dr. Mathur, I note first that as a treating source Dr. Mathur's opinion cannot be accorded less weight than that of non-treating sources without first establishing independent reasons for assigning it less than controlling weight. As the Sixth Circuit teaches, if an ALJ can decline to give a treating source's opinion controlling weight simply by pointing to a non-treating source that has reached a contrary conclusion, "it would be a rare case indeed where such [controlling] weight would be accorded," and the treating physician rule would be effectively neutered.[91]

In this case, the only reason given for discounting Dr. Mathur's opinion not related to its purported conflict with the opinions of other sources is that it is internally inconsistent on two points from an opinion he rendered 60 days later. More specifically, the alleged inconsistency is that Dr. Mathur did not list two particular limitations in an earlier report that he included on a later one.[92]

---

may improperly circumvent the treating physician rule entirely, eliminating the deference owed to a treating source's opinion of the treatment notes in favor of improperly giving greater weight to the ALJ's own interpretation of the notes. *Harmon*, 2011 WL 834138, at *10.

[91] *Hensley*, 573 F.3d at 267.

[92] Tr. at 28.

A review of the two reports at issue easily discloses that Dr. Mathur was completing two different functional assessment forms that contain slightly different formulations of similar issues.[93] As Morales concedes, Dr. Mathur in November listed Morales as having a "marked" limitation in the area of his ability to work in proximity to others without exhibiting behavioral extremes[94] but rated his function as only "moderately limited" in September.[95] The second purported "inconsistency" cited by the ALJ is that Dr. Mathur found Morales in November to be "markedly" limited in his ability "to respond appropriately to changes in the work setting," but made no such finding in his September report.[96] In fact, similar to the prior example, Dr. Mathur rated Morales's limitation in September as moderately limited.[97]

In both cases, Morales contends that the "exceedingly minor differences" between these two issues out of approximately 20 that were covered in each report may reflect Dr. Mathur's continued reflection on Morales's condition, or document a change in his condition, or even be a true lack of complete consistency, but they do not rise to the level of diminishing the weight given to the functional opinion of a treating source from controlling

---

[93] The earlier form from September, 2011 (Tr. at 560-61) contains 20 questions, while the later form from November, 2011 contains 19 (*Id.* at 565-66).

[94] Tr. at 565.

[95] *Id.* at 560.

[96] *Id.* at 28.

[97] *Id.* at 560.

weight to merely little weight.[98] As such, Morales is in effect claiming that the reasons given are not good reasons, as is required by the rubric.

I agree. Without more, the small discrepancies noted here may well merit additional inquiry as to why they exist, or even warrant a slight downgrading of weight to something just below controlling, but standing alone they are not themselves good reasons for reducing the weight given to the RFC opinion of a treating source to a negligible amount and so placing it below the opinions given by non-treating sources. There is an unfortunate sense here of simply playing "gotcha," where instead of a reasoned analysis, the entire review of a treating source opinion, which is invested by the Commissioner's own regulations with presumptive controlling weight, has been reduced to flyspecking the record in search of a minor inconsistency or variant and then hanging the whole weight analysis on that weak thread.

In sum, for the reasons discussed, the opinions of the two treating sources were not handled in conformity with the long-standing rules applicable in this Circuit, and that failure cannot be excused by recourse to the harmless error analysis also approved by the Sixth Circuit. Accordingly, the decision must be reversed and the matter remanded.

## Conclusion

For the reasons stated, substantial evidence does not support the finding of the Commissioner that Morales had no disability. Accordingly, the decision of the Commissioner

---

[98] ECF # 15 at 6.

denying Morales supplemental security income is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.


Dated: May 14, 2014                         s/ William H. Baughman, Jr.
                                            United States Magistrate Judge